David W. Murray, Jr. and Gretchen Murray v. Commissioner.
Murray v. Commissioner
Docket No. 86468.
United States Tax Court
T.C. Memo 1962-2; 1962 Tax Ct. Memo LEXIS 305; 21 T.C.M. (CCH) 7; T.C.M. (RIA) 62002; January 4, 1962
*305 Walter J. Murray, Esq., 3965 Penobscot Bldg., Detroit, Mich., for the petitioners. J. P. Graham, Esq., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner determined a deficiency of $18,063.83 in the petitioners' income tax for the taxable year 1956. The sole question for decision is whether the petitioners are entitled to deduct as a casualty loss the amount of $30,334.35 which was claimed by them but disallowed by the Commissioner. Findings of Fact Some of the facts are stipulated and are found as stipulated. The petitioners are husband and wife. They filed their joint Federal income tax return for the year 1956 with the district director of internal revenue at Cleveland, Ohio. On May 27, 1954, the petitioners purchased a house and lot located at 21050 Avalon Road, Rocky River, Ohio, for $54,000. The property had been offered for sale for over a year prior to this purchase, and the price of $54,000 was a highly advantageous one to the petitioners. * The property was approximately 2 1/2 to 3 acres in size and fronted on Lake Erie. It was improved by a large and handsome brick dwelling, an adjoining large garage with *306 living quarters above, a beach house and a pier. Easy access was provided from the dwelling to the beach house by means of an elevator and a tunnel. There was also a lighted tennis court adjacent to the beach. The property was assessed at $73,000 for purposes of property taxes for the year 1954 and this represented approximately 40 percent of its fair market value. The property was not level; in fact, the dwelling was located on raised land which fell off rather steeply toward the lake a short distance landward of the beach. The earth on this slope was held back from the beach level by a concrete retaining wall, the eastern portion of which was located landward of the tennis court. At the time the petitioners purchased the property this portion of the wall was cracked and leaning outward toward the tennis court along a part of its length. The bank of soil which this wall held back rose to a height of about 12 feet behind the wall and slanted upward from there in the direction of the *307 house at an angle of 45 degrees. The wall rose 2 to 3 feet above the soil in contact with it. The improvements to the land had been constructed in 1941. The property also contained a number of large ornamental trees. Some of these trees grew on an embankment and served to hold the soil in place. On March 1, 1956, strong, gusty winds that began in the late forenoon continued throughout the afternoon and evening. A squall line passed through the Cleveland area shortly after 8:00 p.m. The wind from the southwest reached momentary gusts of 75 miles per hour and was accompanied by light rain which began at 7:50 p.m. and continued past midnight. As a result of the storm the retaining wall along the tennis court fell over onto the court, and the soil which it had retained was released and spilled forward over the toppled wall. This damage reduced the fair market value of the property by $4,000. On May 12, 1956, a severe thunderstorm, accompanied by high winds, struck the Cleveland area. Heavy rains from this storm so loosened the soil that a number of trees on the petitioners' property were blown over. Other trees were damaged by the wind, and falling trees and limbs damaged the house. *308 The petitioners recovered $6,650.83 in insurance as a result of the damage to the house. The trees were not insured. The trees destroyed were of the following diameters: 3 at 14 inches, 5 at 16 inches, 1 at 20 inches, 2 at 22 inches, 1 at 24 inches, 1 at 26 inches and 1 at 28 inches. Two of the trees destroyed by the storm which were in excess of 20 inches in diameter were located an even distance from the front door of the house and framed the colonnaded colonial entryway which occupied a large part of the front of the house. These trees provided shade for the entire front of the residence. They were replaced by the petitioners shortly after the storm with trees 12 inches and 13 inches in diameter at a cost of $100 an inch. The loss of these two trees plus that of the other trees reduced the fair market value of the property in the amount of $14,299.47. This figure includes $13,200 for the decrease in value of the property due to the loss of the trees and $1,099.47 for the cost of removing the debris left by the storm. On their return for the year 1956 the petitioners deducted the amount of $33,834.35 as a casualty loss resulting from these two storms. This amount was made up *309 as follows: Damage to house, not reim-
bursed by insurance
$ 934.88
Value of trees destroyed
13,200.00
Cost of removing debris
1,099.47
Loss of retaining wall
18,600.00
The Commissioner disallowed this deduction for lack of substantiation except to the extent of $3,500. Opinion A taxpayer is entitled to a deduction for a casualty loss occurring to property not used in a trade or business. The amount of the loss allowable is the difference in value of the property immediately before and immediately after the casualty, but not more than the adjusted basis of the property. . We have found that the petitioners' retaining wall was destroyed by reason of a windstorm. In addition to some evidence as to the decrease in the value of the property as a whole due to the casualties, the petitioners presented evidence that the replacement cost of the wall would be $20,000. However, there was also evidence that the wall was cracked and in a weakened condition for some time prior to the casualty. The wall was 15 years old at the time it fell; thus, it was worth substantially less than its replacement value immediately *310 prior to its fall. Taking into consideration the value of the wall as it stood, plus the damage caused by the release of the soil it retained, we find that the loss in value due to the collapse of the wall was $4,000. There can be no doubt that the decrease in the value of the property brought about by the loss of 14 large trees was substantial. This loss is not susceptible of precise demonstration. The petitioners' evidence tended to show that the loss was even greater than the deduction claimed by them. Therefore, the petitioners are entitled to a loss with respect to the trees in the amount claimed by them. . The record adequately supports the sum of $1,099.47 claimed for clearing the property of debris. We hold it is allowable. The petitioners claimed a deduction of $934.88 for repairs to the dwelling in excess of their insurance recovery. We do not believe that the petitioners presented sufficient evidence to show that the claimed repairs did not include capital improvements. Therefore, the respondent is upheld on this item. Decision will be entered under Rule 50. Footnotes
*. The first sentence of the paragraph was deleted and the first two sentences of the paragraph were added by an official order of the Tax Court dated February 19, 1962 and signed by Judge Fay.↩